**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 15-cr-353-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**1.    KATHERINE O'NEAL,**

      Defendant.

---

## ILLEGAL EXPORT ELEMENTS INSTRUCTION

---

The parties requested a pretrial ruling on the jury instruction that will be given for Count 1, unlicensed export of firearms in violation of 18 U.S.C. § 554(a). That statute reads as follows:

> Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be fined under this title, imprisoned not more than 10 years, or both.

The parties' major dispute is whether the word "knowingly" in the first clause requires the Government to prove that Defendant Katherine O'Neal knew she was acting contrary to law (O'Neal's position), or only that she was taking firearms outside the United States (the Government's position). (*See* ECF Nos. 79, 80, 91, 95, 99, 102.)

The Supreme Court has established a default presumption regarding the

meaning of "knowingly" in criminal statutes. "[U]nless the text of the statute dictates a different result, 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." *Bryan v. United States*, 524 U.S. 184, 193 (1998) (footnote omitted). Thus, for example, one who "knowingly" possesses an unregistered machine-gun only needs to know that the firearm includes characteristics that happen to bring it within the statutory definition of a machine-gun; he does not need to know that possessing an unregistered machine-gun is illegal. *Id.* This is in contrast to "willfully," which normally requires the Government to prove that the defendant acted "with knowledge that his conduct was unlawful." *Id.*

These principles, in isolation, appear to support the Government's position. This is best shown by repeating the statutory text, but also inserting line breaks for clarity:

> Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, ***or***
>
> receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States,
>
> shall be fined under this title, imprisoned not more than 10 years, or both.

18 U.S.C. § 554(a) (emphasis added). As formatted, it becomes clear that the statute encompasses two offenses: (1) the exportation itself ("Export Clause"), and (2) acquisition of goods intended for exportation ("Acquisition Clause"). *See United States v. Chi Tong Kuok*, 671 F.3d 931, 944 (9th Cir. 2012) ("The emphasized 'or' above divides this statute into two clauses: the first applying to exporters, and the second to buyers.").

2

The Acquisition Clause explicitly requires a defendant to act while "knowing" that the acquired goods are "intended for exportation contrary to any law or regulation of the United States." This is close to what the Supreme Court in *Bryan* calls a "willful" state of mind, 524 U.S. at 193, although it does not require the defendant to know that his or her *own* conduct is unlawful, only that *someone else* intends to deal with the goods unlawfully—a distinction that will become important below. In any event, the Export Clause contains no similar qualifying language about knowledge of illegality. Thus, one could reasonably argue that the default definition of "knowingly" applies to the Export Clause.

Other authority, however, casts doubt on such a construction of the statute. This authority construes a very similar statute regarding illegal *importation*, 18 U.S.C. § 545. The similarities between the statutes can be seen by arranging the text of § 554(a) and § 545 side-by-side:

| Export Statute (18 U.S.C. § 554(a)) | Import Statute (18 U.S.C. § 545, second paragraph) |
|---|---|
| Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, | Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, |
| or, | or, |
| receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, | receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law— |
| shall be fined under this title, imprisoned not more than 10 years, or both. | Shall be fined under this title or imprisoned not more than 20 years, or both. |

3

Like the export statute, the import statute has two main clauses: (1) the importation itself ("Import Clause"), and (2) receipt of imported goods ("Receipt Clause").

The Tenth Circuit construed the Import Clause in *United States v. Bader*, 678 F.3d 858 (10th Cir. 2012), in a manner that, at first blush, favors O'Neal. But the matter is complicated by the Tenth Circuit's lack of a detailed discussion on the subject in an otherwise voluminous opinion.

On its face, *Bader* addressed whether the Government had presented sufficient evidence from which a jury could have found that the defendant "possessed the necessary *mens rea* to be convicted under 18 U.S.C. § 545." *Id.* at 879. In the process, the Tenth Circuit discussed the proper formulation of the *mens rea* element. *See id.* There is no hint in the Tenth Circuit's opinion that the *mens rea* element was contested in the district court or on appeal, but the Tenth Circuit nonetheless announced its agreement with other circuits that "knowingly" in § 545 modifies the entire subsequent clause, "imports or brings into the United States, any merchandise contrary to law." *Id.* Thus, the Government was required to prove that the defendant knew he was importing something illegally. *Id.* And, says O'Neal, if "knowingly" modifies everything after it in § 545's Import Clause, how could it not have the same effect in § 554(a)'s very similar Export Clause?

A potential answer to O'Neal's otherwise sound argument comes from all of the details the Tenth Circuit left out. The Tenth Circuit noted that it was responding to an argument made at page 23 of the Government's appeal brief. *See id.* That portion of the Government's appeal brief makes clear that the Government was addressing Counts 1 and 17 in that case. *See* 2011 WL 585058, at *20. Count 1 of the second

4

superseding indictment in that case was a charge of conspiracy to violate 18 U.S.C. § 545 (the import statute), specifically, to "facilitat[e] the sale of [human growth hormone], *after importation*, *knowing the same to have been imported into the United States [illegally]*." (*United States v. Bader et al.*, No. 07-cr-0338-MSK, ECF No. 229 ¶ 17 (D. Colo., Sept. 9, 2008) (emphasis added).)  And Count 17 was the underlying § 545 offense of "facilitat[ing] the sale of [human growth hormone], knowing the same to have been imported into the United States [illegally]." (*Id.* ¶ 42.)  In short, the defendant had been charged with and convicted of violating the Receipt Clause—a very important distinction, because the Receipt Clause (like the Acquisition Clause in § 554) explicitly requires knowledge that goods had been imported illegally.

The Tenth Circuit, however, apparently missed the distinction between the Import Clause and the Receipt Clause, perhaps because of the parties' sloppy appellate briefing.  *See Bader*, 678 F.3d at 879 (announcing that "[n]either party does a good job of developing this issue").  Ignorance of the distinction is most apparent in the Tenth Circuit's holding: "In the present case, therefore, the government could satisfy § 545's *mens-rea* requirement so long as it could demonstrate that Mr. Bader 'knew' that he was *importing* a drug from Genescience illegally." *Id.* (emphasis added).  The defendant, in fact, had not been charged with *importing* a drug, only with *facilitating the sale* of already-imported drugs.  Thus, the Tenth Circuit, without argument from the parties, decided the state of mind needed to violate the Import Clause, even though the Government had charged the defendant with violating only the Receipt Clause, which contains a distinct *mens rea* element.  In other words, the Tenth Circuit decided the

5

state-of-mind requirement for a crime of which the defendant had not been convicted.[1]

All that said, what about the extra-circuit authority with which the Tenth Circuit agreed in reaching its holding about the Import Clause? It turns out that two of the Tenth Circuit's cited cases were explicitly about the Receipt Clause, although these cases at times also employed loose language that ignored the distinction between importation and receipt of imported goods. *See United States v. Molt*, 615 F.2d 141, 144, 146 (3d Cir. 1980); *Roseman v. United States*, 364 F.2d 18, 19–20, 23 (9th Cir. 1966). The single case that actually addresses the Import Clause is *United States v. Garcia-Paz*, 282 F.3d 1212 (9th Cir. 2002), where the defendant had been charged with importing marijuana. *See id.* at 1213–14. The defendant confessed to law enforcement that "he was being paid $400 to help bring 'medicine' across the border." *Id.* at 1213. After being convicted under § 545, he argued on appeal that the jury should have been required to find that he knew he was importing marijuana, as opposed to something else. Without citation to authority, the Ninth Circuit rejected this argument as follows:

> The word "knowingly" in this construction modifies "imports or brings into the United States, any merchandise contrary to law." It is not a requirement of the offense that the defendant know the type of merchandise he is importing. He need only know that he is importing or bringing in "merchandise contrary to law."

---

[1] One could argue, perhaps, that the Tenth Circuit was actually reading the statute differently than the Court has. Conceivably the Tenth Circuit understood the first four words of the import statute ("Whoever fraudulently or knowingly . . ."—identical to the export statute) as establishing a *mens rea* for both the Import Clause and the Receipt Clause. This is ultimately untenable, however. The Tenth Circuit specifically stated that "knowingly" modifies "imports or brings into the United States, any merchandise contrary to law," *see id.*, a phrase that only occurs in the Import Clause. Moreover, such an interpretation would mean that Congress took the unlikely approach of requiring a double *mens rea* for the Receipt Clause: knowing that items had been imported illegally, and knowing that it is illegal to receive items imported illegally. But the Acquisition Clause (the export statute's equivalent to the Receipt Clause) is not at issue here, so the Court need not decide whether Congress actually intended as much.

*Id.* at 1217. Again, whether "knowingly" modified the entire subsequent clause was not at issue, but only how much the defendant was required to know.[2]

In short, every case O'Neal has cited regarding interpretation of the Import Clause has offered only *dicta* on the question of whether "knowingly" modifies "contrary to law." Despite that, all of this *dicta* may still be true. Stated somewhat differently, the default presumption that "knowingly" refers to the underlying facts, not the law, may be rebutted if "the text of the statute dictates a different result," *Bryan*, 524 U.S. at 193, and perhaps that is the case with the Export Clause—even if prior cases have not explained why. Or, from yet another perspective, it may be that even if "the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense," *id.*, the facts that constitute an Export Clause offense *include* the knowledge that one is acting "contrary to law."

O'Neal makes this latter argument (ECF No. 99 at 4), relying on a four-paragraph unpublished *per curiam* disposition from the Fifth Circuit, *United States v. Bernardino*, 444 F. App'x 73 (5th Cir. 2011). *Bernardino* holds that a defendant must "know that he was dealing with weapons and ammunition that were intended for export, and that their exportation would be illegal." *Id.* at 74. From this language, it should be immediately apparent that the court was discussing the Acquisition Clause, not the Export Clause—something the court makes explicit earlier in its opinion. *See id.* ("Daniel Bernardino appeals his conviction under 18 U.S.C. § 554(a), which imposes criminal penalties for

---

[2] Based on *Bader*, *Garcia-Paz*, and another decision that is actually about the Receipt Clause, not the Import Clause, *see United States v. Zhang*, 833 F. Supp. 1010, 1019 (S.D.N.Y. 1993), one judge in the District of Minnesota has held that "knowingly" in the Export Clause of § 554 should likewise be construed to apply to the entire clause, including knowledge that one's actions are "contrary to law." *United States v. Galimah*, 2013 WL 1408635, at *5 (D. Minn. Apr. 8, 2013).

7

'fraudulently or knowingly' facilitating the exportation of items one 'know[s] . . . to be intended for exportation contrary to any law or regulation of the United States.'").[3]

O'Neal also points to *Liparota v. United States*, 471 U.S. 419 (1985). (*See* ECF No. 99 at 5.) *Liparota* is the single example given in *Bryan* where the default construction of "knowingly" did *not* apply because "the text of the statute dictate[d] a different result." *Bryan*, 524 U.S. at 193 & n.15. *Liparota* also shows that when the Supreme Court speaks of the text of the statute dictating a different result, it does not mean those words literally. Other considerations beyond the text may be relevant.

*Liparota* involved a statute that criminalized "knowingly" using, transferring, acquiring, altering, or possessing food stamps "in any manner not authorized by [the statute] or the regulations." 471 U.S. at 420 (internal quotation marks omitted). The defendant operated a restaurant that was not authorized to accept food stamps, but he had engaged in literal back-room transactions to buy food stamps at a discount from their face value. *Id.* at 421. The defendant argued to the district court, unsuccessfully, that the statute requires knowledge of violating the law, not just knowledge of the facts that turn out to be a legal violation. *Id.* at 422.

When the case reached the Supreme Court, it reasoned that

> Congress certainly intended by use of the word "knowingly"
> to require *some* mental state with respect to *some* element
> of the crime[, and] the interpretations proffered by both
> parties accord with congressional intent to this extent.
> Beyond this, the words themselves provide little guidance.
> Either interpretation would accord with ordinary usage. The
> legislative history of the statute contains nothing that would
> clarify the congressional purpose on this point.

---

[3] This quote combines the *mens rea* of the Export and Acquisition Clauses. As already stated (n.1, above), the Acquisition Clause is not at issue here so the Court need not decide whether that is a proper construction.

8

*Id.* at 424–25 (footnote omitted; emphasis in original).  However, the court could not accept the Government's construction, which would amount to strict liability.  The court therefore fell back on the "background assumption of our criminal law" that intent to behave badly is presumed in criminal statutes.  *Id.* at 425–26.  The court found that presumption "particularly appropriate" under the circumstances because

> to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct.  For instance, [the statute] declares it criminal to use, transfer, acquire, alter, or possess food stamps in any manner not authorized by statute or regulations.  The statute provides further that "[c]oupons issued to eligible households shall be used by them only to purchase food in retail food stores which have been approved for participation in the food stamp program at prices prevailing in such stores."  This seems to be the *only* authorized use.  A strict reading of the statute with no knowledge-of-illegality requirement would thus render criminal a food stamp recipient who, for example, used stamps to purchase food from a store that, unknown to him, charged higher than normal prices to food stamp program participants.  Such a reading would also render criminal a nonrecipient of food stamps who "possessed" stamps because he was mistakenly sent them through the mail due to administrative error, "altered" them by tearing them up, and "transferred" them by throwing them away.

*Id.* at 426–27 (citations and footnotes omitted; emphasis in original).

O'Neal argues that "[s]imilar hypotheticals abound under 18 U.S.C. § 554[, if] a knowledge-of-illegality *mens rea* [does] not apply."  (ECF No. 99 at 6.)  For instance, says O'Neal, the Export Clause "would criminalize the actions of a well-meaning grandmother who 'exports' cosmetics to a grandchild living in Canada if the cosmetics were not properly labeled in English," given that 21 U.S.C. § 382(f)(5) prohibits exporting a "drug or device" that does not meet the labeling requirements of the

9

importing country.  (*Id.*)[4]

There is merit in O'Neal's argument, but the argument stands on firmer ground if it starts from a principle not cited by either party: "[C]ourts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element." *Flores-Figueroa v. United States*, 556 U.S. 646, 652 (2009).  The Government, having never cited this principle, gives no reason why the ordinary presumption should not apply.  Rather, the Government's argument focuses on *Bryan*'s default presumption regarding the meaning of "knowingly," and the distinction between "knowingly" and "willingly."  (ECF No. 95 at 11–14.)  But *Flores-Figueroa* and *Bryan* are consistent.  *Bryan* states that the default meaning of "knowingly" is "proof of knowledge of the facts that constitute the offense."  524 U.S. at 193.  Here, unlike in *Bryan* and other cases the Government cites (*see* ECF No. 95 at 12–13), the relevant statute includes a "contrary to law" element.  Indeed, both parties agree that "contrary to law" is an element of an Export Clause offense.  (*See* ECF No. 79 at 4; ECF No. 80-1 at 2.)  Thus, "contrary to law" is a fact constituting an Export Clause offense, and so the presumption under both *Flores-Figueroa* and *Bryan* is that the *mens rea* applies.  And this is consistent with the Supreme Court's concern in *Liparota* about criminalizing innocent conduct.

Accordingly, the Court agrees with O'Neal's claim that the Government must prove she knowingly violated the law.  O'Neal, however, states no specific objection to any other part of the Government's proposed instruction, including the following, which provides a significant qualifier:

---

[4] This example presumes knowledge of Canada's labeling requirements that is not in the record, but that is immaterial to the present analysis.

> When the word "knowingly" is used in these instructions, it means that the act is done voluntarily and intentionally, and not because of mistake or accident. Although knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded herself to the existence of a fact. Knowledge can be inferred if the defendant was aware of a high probability of the existence of the fact in question, unless the defendant did not actually believe the fact in question. The government need not prove the defendant knew the exportation or sending was contrary to any specific statute or specific regulation or that an Export License from the Department of State was required.

(ECF No. 79 at 4–5 & ECF No. 91 at 1.) The Court will therefore include this paragraph in the final jury instruction in the modified form set forth below, along with other slight alterations that clarify the instruction. Specifically, the Court adopts the following:[5]

> Title 18, United States Code, Section 554, makes it a crime for anyone to knowingly or fraudulently export, or attempt to export, any article from the United States contrary to any law or regulation of the United States.
>
> For you to find the Defendant guilty of this crime, you must be convinced that the Government has proved each of the following beyond a reasonable doubt:
>
> *First*, that the Defendant knowingly or fraudulently exported, or attempted to export, an article described in the indictment —in this case, firearms;
>
> *Second*, that the Defendant's exportation was contrary to a United States statute—in this case, the Arms Export Control Act, 22 U.S.C. § 2278, and regulations promulgated thereunder; and
>
> *Third*, that the Defendant knew that exporting firearms was contrary to law or regulation.

---

[5] When the Court finalizes the full set of jury instructions, the Court may remove the generic definition of "knowingly" in this instruction and make it a standalone instruction, given its application to other offenses in this case. If the Court does so, it will cross-reference that standalone instruction.

11

To "export" means to send or carry from the United States to another country.

An act is done fraudulently if it is done by means of false pretenses, promises or representations, made with intent to deceive in order to cause financial loss or loss of property or property rights, or in order to cause a financial gain, either to oneself or to another, or to gain some benefit to oneself or to deprive another of the intangible right to honest services.

An act is done "knowingly" if it is done voluntarily and intentionally, and not because of mistake or accident. Although knowledge on the part of the Defendant cannot be established merely by demonstrating that the Defendant was negligent, careless, or foolish, knowledge can be inferred if the Defendant deliberately blinded herself to the existence of a fact. Knowledge can be inferred if the Defendant was aware of a high probability of the existence of the fact in question, unless the Defendant did not actually believe the fact in question. The Government need not prove that the Defendant knew the exportation or sending was contrary to any specific statute or specific regulation or that any license was required. It is enough if the Government proves that the Defendant generally understood that her actions were unlawful.

SO ORDERED this 22nd day of February, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge